THE STATE v. WILEY MATHEWS, *Appellant.*

1. **Practice in Supreme Court.** Where no objection is made to the evidence contained in the answer of a witness and no reason assigned for its exclusion, the error, if any, can avail the defendant nothing on appeal.

2. **Evidence: RES GESTAE.** Evidence of an act, the character of which not only illustrated the character of the principal act in the crime as part of a system of criminal acts, but was so intimately connected with it as to make it a part of that transaction, and to identify the defendant as a participant therein, is admissible as part of the *res gestae.*

3. ———. Where the evidence in a case tends to show the crime in question to be one of a system of criminal acts and implicates the defendant in the crime, evidence that defendant was concerned in the commission of an extraneous offense as a part of that system is admissible.

4. **Practice: WITNESSES.** Where witnesses have fully detailed their whole connection with the facts of a case, and the relation they bear to it, it is immaterial whether they had employed counsel in their own behalf.

5. ———— : ————. The defendant is entitled to no unfavorable deduction from the failure of the state to call a witness which it had subpœnaed, it appearing the witness was disqualified from testifying for the state.

6. ———— : INSTRUCTIONS. Instructions are to be read together as a whole, and when consistent, their meaning is to be collected from the whole context and not from detached instructions or phrases in them; and if, when so treated, their meaning is obvious, the legal principles announced correct and applicable to the case, they are safe guides for a jury.

7. ———— : NOLLE PROSEQUI, POWER OF COURT TO ENTER. The court has no power to compel the entry of a *nolle prosequi* in a criminal cause, and the prosecuting attorney should not do so, except under a sense of his official duty.

8. ———— : CO-DEFENDANT AS WITNESS. A prosecuting attorney may refer to the fact that defendant failed to call, as a witness in his behalf, a co-defendant not on trial.

*Appeal from Christian Circuit Court.*—HON. W. D. HUBBARD, Judge.

AFFIRMED.

*Boyd & Delaney* and *Travers & Payne* for appellant.

(1) The court erred in admitting evidence tending to show that after the killing, and some three hundred yards away from the scene, the defendant attempted to shoot and kill old man Greene. This was not a part of the *res gestae*, but was evidence of a distinct and independent crime, and was highly prejudical to defendant. *State v. Rainsbarger*, 31 N. W. Rep. 865; *People v. Hamblin*, 7 Crim. Law (Cal.) 846; *Smith v. State*, 17 Neb. 358; *Smith v. Reavis*, 70 Mo. 289; *State v. Reavis*, 71 Mo. 219; *State v. Reed*, 85 Mo. 195; *State v. Turner*, 76 Mo. 351; *State v. Meyers*, 82 Mo. 559; *State v. Beaucleigh*, 92 Mo. 490. (2) The court erred in admitting evidence tending to show that in November, preceding the killing, the deceased, William Edens, was taken out by a body of men and whipped, and that defendant was one of the number. See authorities, *supra*.

The State v. Wiley Mathews.

*B. G. Boone*, Attorney General, for the State.

Evidence is always admissible, for the prosecution, of preparations made by a defendant, or defendants, to commit a crime. Whart. Cr. Ev., ( 9 Ed.) sec. 753 ; Bur. Cir. Ev., pp 343–365 ; *Rex v. Hunt*, 3 Barn. & Ald. 356 ; *Campbell v. Comm.*, 84 Pa. St. 187, 196.

Brace, J.—The defendant Wiley Mathews, with William Walker, John Mathews and thirteen others, was indicted in the circuit court of Christian county for killing Charles Greene on the night of the eleventh of March, 1887. The defendant, upon a separate trial, was convicted of murder in the first degree. William Walker and John Mathews were also, on separate trials, each convicted of murder in the first degree, and their cases brought by appeal to this court, and in each of them, at the present term, decisions have been rendered sustaining their conviction. *Ante*, pp. 95, 119. The record in this case is substantially the same as in those, and as all the points, except those hereinafter noted, were ruled adversely to the defendant in each of those cases, those only will be noticed that are peculiar to this case.

I. Charles Graves, a witness for the state, in delivering his testimony, after having testified that immediately after the shooting, defendant came out of Edens' house, where Greene was killed, to where he was, and that he went down the railroad with him, testified : " He ( defendant ) hollered to a man who was walking *up* the railroad in the direction of where the killing was done, about one hundred and seventy-five or one hundred and fifty yards of Edens' house, I would suppose.

Q. " What was said there?

A. " Some one hollered at this man who was walking up the railroad, and asked him where he was going. Some one in the lead hollered ' Stop that man, or else kill him,' and the defendant, Wiley Mathews,

hollered at him and says, 'Where in the hell are you going?' and the man on the railroad answered, 'I am not going far.' And he says, 'You had better go, and that damn quick,' and just started and turned his gun right down off his shoulder, and Joe Inman caught the gun and said, 'You shan't shoot that man at all.' I had a conversation with him myself right along directly after that a few minutes. I don't suppose we had walked more than fifteen or twenty steps until he said he had got him a man that night to save his Uncle John; that he shot him in the back with a shot gun, and he shoved his hand up on his back something similar to that. He said it was William Edens.''

George W. Greene, the man above spoken of, testi-fied that he believed the man who ordered him to stop was the defendant, although he would not swear posi-tively to it.

It is contended that the admission of this evidence was error for the reason that it tended to prove an independent crime, i. e., an attempt to shoot Greene. Conceding that it does, the question asked was unobjec-tionable. There was no objection made to the evidence contained in the answer and no exception taken to its admission, and no reason assigned for its exclusion. Under repeated rulings of this court, the error, if any, could avail the defendant nothing on appeal as was held in State v. Walker, ante, p. 95, to which could be added numerous others if necessary. The evidence, however, was admissible. The defendant and his com-panions were going directly from the scene of the homicide, just perpetrated. Greene was going towards it. The defendant's halting him was an act, the char-acter of which not only illustrated the character of the principal act in the tragedy, as part of a system of criminal acts, but was so intimately connected with it, as to make it a part of that very transaction, and to identify the defendant as an actor therein. Wharton

Crim. Ev., secs. 31, 32, 38, 46 and 47; *State v. Sanders*, 76 Mo. 35; *State v. Beaucleigh*, 92 Mo. 490; *State v. Rider*, 95 Mo. 485.

II.   There was no error in admitting the evidence, that in November preceding the killing, one of the deceased, William Edens, was taken out by a body of men and whipped, and that defendant was one of the number; or that the defendant and others once took the witness Graves out of the house.   The evidence introduced tended to show that the crime in question was one of a system of criminal acts, and implicated the defendant in that crime, and this evidence tended to prove that he was concerned in the commission of this extraneous offense as a part of that system.   Wharton Crim. Ev., sec. 48, note 4.

III.   There was no error in the ruling of the court, that it was immaterial whether the witnesses Abbott and Nash had employed counsel in their own behalf. They had fully detailed their whole connection with the facts of the case, and the relation they sustained to it as witnesses was fully and obviously before the jury.

IV.   The court committed no error in interrogating the witness Graves for the purpose of ascertaining whether he understood a question asked him, and had answered it according to his understanding, nor in refusing to permit the defendant to show by the sheriff that the witness Inman had been subpœnaed by the state and was in court.   If he was in court, the defendant could have called him.   The fact that he was a co-defendant in the same indictment prevented the state from calling him as a witness, without having first entered a *nolle prosequi* as to him, which the court had no power to compel, and which the prosecuting attorney could not do except under a sense of his official duty.   And the defendant was entitled to no unfavorable deductions, from the mere fact that he was not called by the state under such circumstances.

VOL. 98—9

V. The instructions given in this case cover the whole law of the case, and do not differ materially from those given in *State v. William Walker, ante,* p. 95; and *State v. John Mathews, ante,* p. 119, and it is unnecessary to review them. The criticism upon number 23, that it assumes the guilt of the defendant has nothing to rest upon, when that instruction is read in connection with the other instructions given, and when it is considered that this instruction is not treating of the question of defendant's guilt or innocence, but is confined to pointing out to the jury the evidence by which they may determine who of the witnesses testifying may be deemed accomplices, and to a cautionary instruction as to the weight to be given to the testimony of such witnesses. Instructions are to be read together as a whole, and when consistent, their meaning is to be collected from the whole context, and not from detached instructions or phrases in them, and if, when so treated, their meaning is obvious, the legal principles announced correct, and applicable to the case, they are safe guides for a jury.

VI. The refused instructions in this case are substantially the same as those refused in the preceding cases mentioned, and in regard to them, it is only necessary to say as to such as are peculiar to, this case, that as in the case of John Mathews, no evidence was found upon which to base an instruction for murder in the second degree, manslaughter, or upon the hypothesis of a homicide committed by the defendant in the lawful defense of his uncle, John Mathews.

VII. It is assigned for error that Mr. Hammond, one of the attorneys prosecuting for the state, in his address to the jury, misstated the law in the following language used by him: "The defense put in no evidence except to contradict Mr. Greene by Mr. Allen. Why are not the other defendants here to tell you all about this in behalf of this defendant? They know

what occurred in the house and they might have been put on the stand to testify in this case, and tell you what took place in the house." In the cases of *State v. Chyo Chiagk*, 92 Mo. 396, and *State v. Chyo Goom*, 92 Mo. 418, it was held, under the provisions of Revised Statutes, 1879, sec. 1918, that on the separate trial of one defendant, his co-defendant, not on trial with him, was a competent witness for the defendant on trial, and that he had the right to call such co-defendant not on trial as a witness, and have him testify in his behalf. The statement of Mr. Hammond is in harmony with the law as thus laid down. When two co-defendants are on trial at the same time, it is optional with each of them whether he will go upon the stand and testify in behalf of himself and his co-defendant, and neither can require the other to so testify. Where but one is on trial, it is optional with him whether he will go on the stand and testify or whether he will call his co-defendant or any other witness to testify in his behalf. If he does not avail himself of his privilege to testify in his own behalf, section 1919 provides that, his failure to do so "shall not be construed to affect the guilt or innocence of the accused, nor shall the same raise any presumption of guilt, nor be referred to by any attorney in the case, nor be considered by the court or jury before whom the trial takes place." By section 1918, the husband or wife, as the case may be, of the defendant on trial is made a competent witness in his behalf, and by section 1919 any reference to the failure of the defendant to call the husband or wife is prohibited, but no such prohibition is extended to the failure to call a co-defendant not on trial. Of course, such co-defendant when called, would have the same right as any other witness to refuse to give testimony that might criminate himself, but this is his personal privilege, and has nothing to do with the question of the right of the defendant on trial to have his co-defendant not on trial called to testify, to which right the statement was

limited.   Two other statements of the attorneys prose-
cuting were excepted to, but so far as the connection
can be seen in which they were used, their impropriety
is not apparent.

Finding no reversible error in the record of this
case, the judgment of the circuit court is affirmed.   All
concur, except RAY, J., absent; SHERWOOD, J., who
dissents, and BARCLAY, J., not sitting.

### DISSENTING OPINION.

SHERWOOD, J.—I shall confine my dissent herein to
a single point; it is this : Section 1918, Revised
Statutes, 1879, provides : "No person shall be incompe-
tent to testify as a witness, in any criminal case or
prosecution, by reason of being the person, on trial or
examination * * *; provided, that no person, on
trial or examination * * *, shall be required to
testify, but any such person may, at the option of the
defendant, testify in his behalf, or on behalf of a
co-defendant."

As shown by the majority opinion, Mr. Hammond,
one of the prosecuting attorneys, used this language in
addressing the jury :   "The defense put in no evidence
except to contradict Mr. Greene by Mr. Allen.   Why
are not the other defendants here to tell you all about
this in behalf of this defendant?   They know what
occurred in the house and they might have been put on
the witness stand to testify in this case and tell you
what took place in the house."   This language conveys
the idea and was intended to convey the idea that the
defendant *had it in his power to compel each of his
co-defendants, nolens volens, to testify in his behalf.*

The case of *State v. Chyo Chiagk*, 92 Mo. 417, has
been cited in the majority opinion as sustaining these
remarks of the prosecuting attorney, but it does nothing

of the kind, as will be presently shown. In that case, the co-defendants were jointly indicted with the defendant, he being separately tried, and the court refused to permit his co-defendants, *they being willing so to do*, to testify in his behalf; and in commenting on such ruling, it was held erroneous. This court in discussing that ruling and the section upon which it was supposed to be based, said: "Taking this section in its literal acceptation, it must be confessed that it only applies to 'the person on trial or examination.' 'Such a person,' *i. e.*, 'on trial or examination,' 'may at the option of the defendant testify in his behalf or on behalf of a co-defendant.' Taken as it reads, this section would not only bear the meaning just given to it, but would allow a defendant 'on trial or examination' to *decide* whether his co-defendant should testify in his behalf or not, *which the legislature evidently did not mean.*"

And yet in the very teeth of this plainly worded construction, a construction of the statute necessary to the ruling which immediately followed; a construction so obvious that it commanded the assent of four of the members of this court, it is now gravely asserted that this court sanctioned the view and laid down the law as declared by the prosecuting attorney, that it lay in the power of the defendant to *compel* such testimony on the part of his co-defendants. Whatever supposed right the defendant may have had to *summon* his co-defendants to testify for him, his right and his power *stopped just at that point*, or else neither the familiar maxim which forbids any one to be compelled to criminate himself, nor the constitutional prohibition of similar import, is of any avail to a co-defendant in a criminal cause when called upon to testify to a matter concerning which *he is yet to be tried*. So sedulous have the authorities been touching this point that an *ordinary witness*, one not charged with any crime, will not be compelled to testify where his testimony *might form a*

*link* in the chain of testimony which might lead to his conviction of a crime.  Kelley's Crim. Law and Prac., secs. 148, 358, and cas. cit.  And the authorities show that it is *for the witness to* judge whether his answer will disclose a fact constituting a material link, etc.  Now if this is true of an *ordinary* witness, then *a fortiori* is it true of a co-defendant jointly indicted and summoned to testify.

If the remarks of the prosecuting attorney do not refer to and mean the *compulsory power* of the defendant to bring the witness on the stand and *compel him to testify*, then they are meaningless ; but they are not meaningless, and indicate neither more nor less than what I have said concerning them.  The right to *summon a co-defendant to testify* is one thing ; but the right to compel him when summoned to "*tell what took place in the house*" is another and very different thing ; it involves of necessity, on the part of the defendant, the *idea of compulsory power* to bring about such a result and without such a meaning attached to them, the words used would have been of no advantage to the prosecuting attorney and would have never been uttered by him in his eagerness to secure the defendant's conviction.

More or less of confusion appears to have reigned in the mind of the learned judge when discussing the point in hand, for he says : "When two co-defendants are on trial at the same time it is optional with each of them whether he will go upon the stand and testify in behalf of himself and his co-defendant and neither of them can require the other to so testify." If "*optional with each of them*" it is difficult to see where *the compulsion lies ;* but if there is no such compulsion, as is intimated in the latter clause of the sentence quoted, that "*neither can require the other to so testify*," then what becomes of the remarks of the prosecuting attorney, and where do they find any support?

· As already seen they cannot by any amount of ingenious gloss be "*limited*" so as to confine them to the mere right of the defendant "to have his co-defendant not on trial *called to testify*. Such an assumption is made at the expense of the record and the plain meaning of the words employed; and the remarks of the prosecuting attorney were also an assumption that the co-defendant if *summoned* would have testified. What authority had he for such assumption? It is unnecessary to comment on the damage these remarks may have done the defendant, as that much is conceded by the argument of the majority, if the remarks were improper. I therefore dissent from the conclusion reached.

For further reasons for my dissent see the opinion filed by me in the case of *State v. William Walker*, *ante*, p. 95.