# CASES DETERMINED

BY THE

# SUPREME COURT

OF THE

# STATE OF MISSOURI

AT THE

OCTOBER TERM, 1901.

---

(*Continued from Volume 164.*)

THE STATE v. WEAVER, Appellant.

Division Two, November 12, 1901.

165 1
e172 4204

1. **Criminal Law:** EVIDENCE: THREATS: DECLARATIONS OF ACCESSORIES. Where accused and two others, indicted jointly with him for the murder of a police officer, had been arrested in the city where the homicide occurred about a year prior thereto, it was error on the trial of accused to admit evidence to the effect that one of accused's co-indictees had said at that time that he would get even with the police of the city if it took twenty years, it not being shown that deceased was a member of the police force when the threat was made, or that any of those indicted knew that he was at that time or subsequently, and it not appearing that accused took any part in the threat, or that any conspiracy existed to do any such act as was charged in the indictment.

2. ———: ———: ATTEMPT OF CO-INDICTEES TO BREAK JAIL. Where accused and two others were jointly indicted for murder, it was error on the trial of accused to admit evidence showing that his co-indictees

State v. Weaver.

had endeavored to break jail, it not appearing the accused took any part in such attempt.

3. ———: ———: ———: INSTRUCTION: NOT BASED ON EVIDENCE. Where accused and two others were jointly indicted for murder, it was error for the court on the trial of accused to give an instruction relative to the attempt of accused to break jail, there being no evidence that accused had taken part in the attempt.

4. ———: ———: ———: ———: NO EXCEPTIONS SAVED. No exception being taken to the giving of such instruction, it did not constitute reversible error.

5. ———: FAILURE OF CO-INDICTEES TO TESTIFY: REMARKS OF COUNSEL. Revised Statutes 1899, section 2638, declares that if an accused shall not avail himself of his right to testify, or of the testimony of the wife or husband, the same shall not be referred to by the attorney in the case. *Held*, that where accused and two others were jointly indicted for murder it was error for counsel for the State on the trial of accused to remark to the jury on the failure of the co-indictees to testify as to their whereabouts at the time of the crime, and to state that he made no reference to the fact that accused was not placed on the stand, inasmuch as the latter statement was, in effect, a reference to the failure of accused to testify, and the statute, though in terms applying only to husband and wife, does not sanction a reference to the failure of a co-indictee to testify. (Overruling State v. Wiley Mathews, 98 Mo. 125.)

Appeal from Pike Circuit Court.—*Hon. D. H. Eby,* Judge.

REVERSED AND REMANDED.

*E. W. Major, Dempsey & McGinnis* and *J. E. Thompson* for appellant.

(1) The statement made by Burns in the presence of Weaver and Logan while they were confined in the city calaboose at Louisiana, a year or so prior to the night Pew was killed, and which was to the effect that "he (Burns) would get even with the police of Louisiana if it took twenty years," should not have been admitted in evidence in trial against Weaver. There was no conspiracy claimed at that time, and it

is only after a conspiracy has been shown to exist that acts or declarations of one of the parties in the prosecution of the common design and during the pendency of the common criminal enterprise are considered as the acts of all and admitted as evidence against all. State v. Daubert, 42 Mo. 238; State v. Melrose, 98 Mo. 594; State v. Minton, 116 Mo. 605; State v. Fredericks and Reèd, 85 Mo. 149; State v. William Walker, 98 Mo. 95; State v. Hicks, 129 Mo. 99; State v. Crabtree, 111 Mo. 136. No conspiracy is claimed by the State to have existed at that time and there is no evidence that Pew was a member of the police force at that time or that appellant or his co-defendants knew Pew was a member of the police force at any time. It could not be said that the statement made by Burns was a part of the *res gestae* and accompanying some act done in the perpetration of the common criminal design directed against Pew, and it was,.therefore, wholly inadmissible for any purpose. (2) The court should have excluded the evidence as to attempts, if any, made by Burns to break jail while confined in the jail at Bowling Green, awaiting trial. There was no evidence that Weaver, who was confined in the same cell with Burns and Logan, made any attempts to break jail or to assist Burns. The evidence of the jail-keepers and their deputies was to the effect that Weaver did not attempt to break jail. The evidence having gone to the jury was prejudicial to appellant and instruction 5 given by the court upon its own motion did not relieve plaintiff of the prejudice and injury done appellant by reason of the admission of the evidence. (3) Mr. Ras Pearson in his argument to the jury entirely disregarded the statute in the use of the following language: "I have no reference to the fact that this defendant was not placed on the stand." Thereby directly referring to the failure of defendant to testify and calling the jury's attention to the fact in open violation of the plain reading of the statute and the decisions of our courts, and, is reversible error. In disclaiming any reference to the appellant's failure to testify he does the very thing

the statute prohibits him from doing, that is to refer or allude to the matter. State v. Moxley, 102 Mo. 393; State v. Brownfield, 15 Mo. App. 593; State v. Martin, 74 Mo. 547; State v. Hudspeth, 150 Mo. 31; State v. Graves, 95 Mo. 511. (4) The attorneys for the State, in referring to the co-defendants' failure to testify, did so in such a manner as to insinuate and allude to appellant's failure to testify. It was simply an adroit way of alluding to appellant's failure to testify. An attempt, purposely made, to accomplish indirectly that which could not have been accomplished by a direct statement. There is the same fault in the arguments of Mr. Eugene Pearson and George W. Emerson. They were exceedingly reckless in their use of pronouns when referring to the co-defendants' failure to testify, and trod upon dangerous ground with seeming indifference. State v. Moxley, 102 Mo. 393; State v. Pagels, 92 Mo. 311; State v. Mahly, 68 Mo. 315; State v. Martin, 74 Mo. 549; State v. Fairlamb, 121 Mo. 150. While the Supreme Court in the case of State v. Wiley Mathews, 98 Mo. 125, permitted a plain reference to the failure of co-defendants to testify, yet that reference was free of any insinuation as to Mathews' failure to testify. The court, however, was divided and the dissenting opinion written by the learned judge in that case is so strong that it may yet become the law in this State.

*Edward C. Crow,* Attorney-General, with whom is *Perry S. Rader,* for the State.

(1) No authority cited by appellant militates against the admissibility of the threat made by Burns in the presence of defendant, that he would get even with the Louisiana police if it took twenty years. This was a threat made prior to the murder, and not subsequent thereto. It was held in State v. Grant, 79 Mo. 137, and Carver v. Huskey, 79 Mo. 510, and State v. Gray, 76 Mo. 357, that the nearness or remoteness of threats to the date of the commission of the crime does not affect their

admissibility or competency. The conclusion from the evidence is inevitable that if Burns was at the place of the homicide, defendant was there also; and if Burns was there and killed a policeman, this threat was competent in the trial of Weaver for murdering that policeman; and certainly if Weaver killed him, it was competent. State v. Orrick, 106 Mo. 120.

(2) The remarks of the State's attorneys do not constitute reversible error. It was very plain that those remarks did not refer to the defendant, but to his co-defendants. It is the merest technicality, is in fact a mere quibble, to contend that Mr. Pearson's use of words, "I have no reference to the fact that this defendant was not placed on the stand," was such a reference as the statute condemns. That was simply an attempt to make the jury clearly understand that his preceding remarks had no reference to the defendant. It was a remark in the defendant's favor, and hence, not harmful. The remarks of the State's attorneys can then be condemned only on the theory that it was improper to refer to the failure of the co-defendants to testify. This court said in the Bald Knobber case of State v. Mathews, 98 Mo. 130, that comment on the failure of a co-defendant to testify was not error. State v. Phillips, 160 Mo. 507; State v. Stubblefield, 157 Mo. 365; State v. Kennedy, 154 Mo. 285.

SHERWOOD, P. J.—This is a prosecution for murder; defendant being found guilty of murder in the second degree, and sentenced to ten years in the penitentiary. The homicide occurred on the night of February 13, 1900. The person charged to have been killed was Lowell Pew, nightwatch in the city of Louisiana, Missouri, and he was shot and instantly killed at the "K" line depot in that city. There was a great deal of mystery connected with the killing of Pew. It is unnecessary at this time to go into the evidence to any considerable extent in passing upon those assignments which we deem necessary to notice.

Burns, Weaver and Logan were the three co-indictees in this case; and on severance had, Weaver alone was put on his trial. He had no means to employ counsel, and so the present counsel were appointed by the court to defend him as well as those who were indicted with him. These three persons were what is known as tramps and when arrested no weapons of any kind were found upon them. Weaver had been tried once before, but the jury failed to agree. Then the trial of defendant again came on, some features of which will now receive comment.

1. A year or so before Pew was killed, Burns, Weaver and Logan had been arrested in Louisiana on some trivial charge, and while confined there in the calaboose of that city, Burns said, "he would get even with the police of Louisiana if it took twenty years." This evidence of what *Burns* threatened to do was afterwards, against defendant's objection and exception, admitted in evidence against *Weaver* when on trial for the murder of Pew, something which occurred over a year after the threat made, although it was not shown that Pew was a member of the police force at the time Burns made that threat, or that Weaver or Burns or Logan knew that Pew was a member of the police force at the time nor subsequently; and although Weaver took no part in the threats and gave them neither assent nor approval.

The only way in which such evidence could have been made relevant and admissible against defendant would have been to have introduced evidence to show that a conspiracy existed *at the time* Burns made his threat, between Burns and Weaver to do to Pew, or at any rate to the policemen of Louisiana, the act charged in the indictment, or one of a similar nature. But there was no such conspiracy proved nor attempted to be proved. [State v. May, 142 Mo. loc. cit. 152, and cas. cit.]

Of course, the nearness or remoteness of the threat would have nothing to do with its admissibility against the person

making it (State v. Grant, 79 Mo. 137; Carver v. Huskey, Ib. 510; State v. Adams, 76 Mo. 357); but because evidence of such threat was competent against *Burns* the *maker,* it would be a most glaring and incomprehensible *non sequitur* to suppose that, therefore, it would be competent against *Weaver.* This point of the *utter inadmissibility* of the evidence aforesaid, must be ruled in favor of defendant.

2.    In the attempt to break jail, while confined in the jail at Bowling Green awaiting trial, the evidence is clear and beyond dispute, that although Burns and Logan participated in that attempt, yet that Weaver had neither part nor lot in that matter.    But no objection or exception was taken by defendant, nor did he move to exclude such testimony, conceding it to have been inadvertently admitted.    The court afterwards, of its own motion, gave an instruction relative to *defendant's attempt to* break jail.    This instruction was plainly erroneous as having no evidential basis on which to rest; no exception, however, was saved to the giving of this instruction, and so its giving constitutes no reversible error.

3.    The chief ground of complaint made in this court is the improper remarks made by counsel for the State when addressing the jury.    These remarks were as follows:

Mr. Eugene Pearson, special counsel for the State, in his argument to the jury, said:

"And the question comes right here as to where these parties were on the evening of this murder and where they were after it, and the question for them to answer to this jury is why Edward Burns and Richard Logan did not enter that witness stand and testify and tell where and how they were—

"By Mr. Major:    We object.

"Mr. Pearson:    It was their right and their duty—

"Mr. Major:    We object to the remarks as made by the counsel, for the reason that Edward Burns and Richard Logan stand jointly indicted with Edward Weaver and they are not on trial, and he has no right to comment on the fact that Ed-

ward Burns and Richard Logan did not take the stand.

"By the Court:   The objection is overruled.

"Defendant excepts to the ruling of the court and saves his exceptions.

"By Mr. Pearson:   For they could enter the witness stand and under the form of an oath give to the jury any evidence to let them know where they were, or calling out the testimony that they were in and around this murder at the time.   I will tell you, sir, it is their duty, it is their right, they owe it to themselves, they owe it to the State and they owe it to this county to explain the circumstances under which they were seen on that evening.   I will tell you, sir, that when they stand charged with being accessories, or in company with one who is charged with a murder, this foul murder of an officer of the land, it is these two men's duty to clear away the cloud and give you the truth, and if they guard the silence, that's the greatest witness, the silent monster that tells them to keep still, I say if they give that silent testimony in that way, they convict themselves as being there at that time with their friend and they are to be regarded in his company for whatever purpose the evidence may bring out.

"Edward Burns and Richard Logan had ample opportunity to prove an alibi, with the men that live in this land, this country which is thickly populated, it is no trouble to show where they have been and what they have been doing; if they had had friends in Lincoln, Illinois, where they said they had worked in the mines, it would have been an easy matter to have brought some one to plead in behalf of their necks, but Edward Burns and Richard Logan do not get on the witness stand and testify, and Edward Burns and Richard Logan do not get on the witness stand and testify as to breaking jail, and as this instruction asserts it is a circumstance that goes to the presumption of guilt.

"By Mr. Major:   I renew the objection, for the reason that Edward Burns and Richard Logan stand jointly indicted

State v. Weaver.

with the defendant Weaver and must in turn be tried, and their failing to go on the stand can not be commented on by the attorney.

"By the Court: The two parties mentioned are not on trial.

"Defendant excepts to the ruling of the court and saves his exceptions.

"By Mr. Pearson: The fact sticks deep, when Edward Burns and Richard Logan did not get on the witness stand, they are going to find it hard to get around and harder still to get around this instruction (reads instruction). (Continuing) In the absence of the testimony of Edward Burns and Richard Logan, in the absence of any qualifying circumstances, raises a presumption of guilt, in the absence of qualifying circumstances, sir, in addition to all this accumulation of evidence we have brought in, in addition to scouring the country and bringing before you their reputation and what they have been, in addition to all that, we bring before the law that you should respect and follow, etc."

Mr. Ras Pearson, special counsel for the State in his argument to the jury said: "And yet they remain as silent as the tomb of ages, they never come to tell you where they were—

"By Mr. Major: We object, he makes a remark that 'they' failed to come and testify and did not single out any two defendants.

"By Mr. Pearson: The attorneys asserted an alibi and when we attorneys assert that they went down Third street and 'they,' the attorneys, were as silent as the tomb of the ages as to where they were—

"By the Court: The rule should be applied strictly to Burns and Logan.

"By Mr. Pearson: I have no reference whatever to the fact that this defendant was not placed on the stand, but they, I mean the counsel, made no effort to show where they were,

after we had shown them going down Third street, their defense being an alibi.

"By Mr. Major: The attorneys certainly were not walking down Third street, and we object to the remark of counsel.

"By the Court: I will say that the remark of Mr. Pearson was susceptible of the construction he places upon it, that is of Mr. Pearson, it is susceptible of the explanation he puts upon it.

"By Mr. Pearson: With the explanation I put upon it, is my remark proper?

"By the Court: You should confine yourself to the evidence and the rule.

"Mr. Pearson: Gentlemen, they have sat here and heard the State prove where they were and carrying the pick and file up that railroad track, yet not one of them raises his voice to deny a single solitary bit of the evidence.

"Counsel for defendant objects to the remark of counsel, because he has not specified any individual, and excepts to the ruling of the court.

"By the Court: I do not think the exception is well taken.

"Defendant excepts to the ruling of the court and saves his exceptions.

"Mr. Pearson: Burns could be a witness, Logan could be a witness. If they were there, as Judge Thompson says they were, and ran when Pew came down the road, they could stand up here and tell you Judge Thompson was telling the truth, but Burns and Logan stand here with it hovering around and over their heads, with the appalling deed, the awful crime, the murder of a police officer in the city of Louisiana, yet they are willing to stand here silent and not say a word and address you gentlemen. Am I going too far when I say that they know better, because when they open their mouth again, the officers of Pike county might follow wherever their voice says they were and find out what Burns and Logan were doing there."

Mr. Emerson, prosecuting attorney of Pike county, in his argument to the jury said:

"The proof lies within the breast of Richard Logan and Edward Burns; they sat in the courthouse and were frequently pointed out by witnesses, and the law of this State is that Senator Majors had a right to put Burns and Logan on the witness stand and let them tell where Weaver was this night and let them tell—

"By Mr. Major:   We object for the reason they stand on joint indictment and Burns and Logan must afterwards be tried and the State had no right to put them on the stand.

"By the Court:   The court does not consider the objection well taken.

"Defendant excepts to the ruling of the court and saves his exceptions.

"By Mr. Emerson:   The court says the objection to my statement is not well taken and  I repeat that Richard Logan and Edward Burns may have been put on the stand and thrown a great deal of light on the question.   They were not put on the stand, they are indicted for this crime, so it is in evidence. They sat and heard witnesses say they saw them in the vicinity of the crime the night it was committed; they heard witnesses say they had on certain kinds of coats and located them in that town.   What are you going to say as to the reason they did not put themselves to testify on the stand, simply because their testimony would have implicated the party on trial?   If it would have implicated him, take that as a circumstance in this case and put it in the balance on the side of the State and weigh it—

"Counsel for defendant objects for the reason assigned heretofore.

"By the Court:   The objection is overruled.

"Defendant excepts to the ruling of the court and saves his exceptions."

Our statute (Revised Statutes 1899, section 2638) declares:   "If the accused shall not avail himself or herself of

his or her right to testify, or of the testimony of the wife or husband, on the trial in the case, it shall not be construed to affect the innocence or guilt of the accused, nor shall the same raise any presumption of guilt, nor be referred to by the attorney in the case, nor be considered by the court or jury before whom the trial takes place."

This section, by its terms, applies only to *husband* and *wife,* but it was never intended to sanction the idea, that therefore, a prosecuting attorney is at liberty to say as he pleases and do as he pleases in regard to the failure of those indicted in the same indictment, to testify at the trial of one of their number who has obtained a severance from them. In this case the prosecuting attorney and his associates were simply engaged in *whipping Weaver over the shoulders of Burns and Logan;* besides, asserting *what they knew, or ought to have known, was not the law.* Burns and Logan being not on trial and being co-defendants of Weaver, could not have testified on behalf the State against him. [State v. Chyo Chiagk, 92 Mo. 395.]

Nor could they have testified on behalf of Weaver, *except at the option of Weaver.* So that by asserting that it was the *duty* of Burns and Logan to have come forward and testified at the trial of Weaver, where they were on the night in question; "to explain the circumstances under which they were seen on that evening;" "to clear away the cloud and give you the truth," counsel for the State thereby asserted a startling proposition, to-wit, that in a criminal prosecution it is the "duty" of the accused "to clear his skirts; to prove his innocence;" that in any event, and at all hazards, a solemn duty is imposed on the accused to go upon the witness stand and testify, no matter whether the result of such testifying would be to incriminate him or not. Hitherto, it had been supposed that we had some constitutional provisions that were rather antagonistic to the theory above announced. Not only were the statements of associate counsel untrue about its being the "duty" of Burns and Logan to go forward and testify when Weaver's trial was on,

State v. Weaver.

but from that statement the jury could readily draw the obvious and inevitable inference that if it was the "duty" of Burns and Logan to go forward uninvited, and testify when Weaver was on trial, then *a fortiori,* it was the "duty" of Weaver himself to testify; to prove his whereabouts on the fatal night; to prove his innocence; "to clear away the cloud and give the jury the truth." In this way by an *indirection,* counsel were enabled to state that it was the "duty" of defendant to have testified, and thereby call attention to the fact, that he had not testified, right in the teeth of the statute. That statute will no more tolerate indirect allusions and evasions than it will direct statements. [State v. Moxley, 102 Mo. 393.]

Not content with the broad and unfounded statements aforesaid, counsel essayed a bolder flight, by saying: "The fact sticks deep, when Edward Burns and Richard Logan did not get on the witness stand, they are going to find it hard to get around and harder still to get around this instruction (reads instruction). (Continuing) In the absence of the testimony of Edward Burns and Richard Logan, in the absence of any quali- fying circumstances, raises a presumption of guilt."

This remark means, if it means anything, that the failure of Burns and Logan to get on the witness stand and testify, "raises a presumption of (defendant's) guilt."

Further along, another counsel for the State declared: "I have no reference whatever to the fact that this defendant was not placed on the stand." This statement was another clear and palpable violation of section 2638. If he did not refer, etc., what need had he to state it? It was simply an attempt on counsel's part, to be,

"Artful most, when least affecting art."

It was a covert method of doing what the statute says shall not be done at all. And if the failure of a defendant to testify in his own behalf, is not allowed to raise a presumption of guilt

against him, then, by the stronger reason the failure of co-defendants to testify, etc., should not raise a similar presumption against the party on trial.

Further on, the prosecuting attorney, not to be out-stripped or outdone by either of the precedent speakers, said: "I repeat that Richard Logan and Edward Burns may have been put on the stand and thrown a great deal of light on the question. They were not put on the stand, they are.indicted for this crime, so it is in evidence. They sat and heard witnesses say they saw them in the vicinity of the crime the night it was committed; they heard witnesses say they had on certain kind of coats and located them in that town. What are you going to say as to the reason they did not put themselves to testify on the stand, simply because their testimony would have implicated the party on trial."

This statement of the prosecuting officer, was simply his *testimony* as to what the testimony of Burns and Logan would have been, if put upon the witness stand. Inasmuch as the circuit judge still declined to rebuke or restrain these unwarranted statements, of course they went to the jury as *the truth.* If the jury, at that juncture, were wavering between the innocence and guilt of defendant, these reiterated judicial approbations of unfounded declarations of what the law and what the facts were, would have been sufficient to have turned the scale in favor of defendant's conviction. [State v. Jaeger, 66 Mo. 173; State v. Rothchild, 68 Mo. 52.]

The State v. Wiley Mathews, 98 Mo. 125, has been cited as deciding that "comment on the failure of a co-defendant to testify, was not error." What was said by Mr. Hammond, on the trial of that case was this: "The defense *put in no evidence* except to contradict Mr. Greene by Mr. Allen. Why are not the other defendants here *to tell* you all about this in behalf of this defendant? They know what occurred in the house, and they might have been *put on the stand to testify in this case, and tell you what took place in the house."* Commenting on this

language, its force, effect and meaning, this court said: "Of course, such co-defendant when called, would have the same right as any other witness to refuse to give testimony that might criminate himself, but this is his personal privilege, and has nothing to do with the question of the right of the defendant on trial to have his co-defendant not on trial *called to testify, to which right the statement was limited.*"

This language of Mr. Hammond was thus whittled down and frittered away as above set forth; but this whittling down process made the remarks *meaningless*. This is self-evident, and therefore requires no further comment, further than to say, the ruling in that case on the point in hand, simply *dodged the issue;* and that is what every *lawyer* will say who reads the opinion in that case.

In Michigan, however, upon a statute similar to our own, where the question arose about a co-defendant testifying, and the lower court charged the jury that Mrs. Smith could not be subpoenaed and testify to her guilt, but the defendant might have subpoenaed her if he was innocent, and she was innocent, and have her swear to that fact; that he did not do this, and it was a circumstance against him. Commenting on this charge, the Supreme Court of Michigan said: "The judge declares the law to be that, in such a case, where one of the two is tried it is his duty to call the other as a witness, and his neglect so to do will be taken as a circumstance against him. There is' neither reason nor authority for this rule, and the error committed in giving these charges was seriously prejudicial to the rights of the defendant." [People v. Hendrickson, 53 Mich. 525.]

On these reasons and authorities aforesaid, Wiley Mathews' case should no longer be followed, and the judgment herein should be reversed and the cause remanded. All concur.