(No. 11100.—Judgment affirmed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, vs. PETER PATRICK et al. Plaintiffs in Error.

*Opinion filed February 21, 1917.*

1. CRIMINAL LAW—*when court may assume, in prosecution for causing an abortion, that the removal of a fœtus had been proved.* In a prosecution for causing an abortion, where the attending physician testifies that an abortion had occurred and that he found a portion of the placenta in the uterus, it must conclusively follow that a fœtus had been expelled from the womb, and it is not error for the court to assume such fact in putting a hypothetical question to one of the witnesses.

2. SAME—*when it is not error for the court to remark that the witness did not understand meaning of a word.* During the cross-examination of the complaining witness in a prosecution for causing an abortion it is not error for the court to remark that the witness did not understand the meaning of a word used by counsel in one of his questions, where the court could observe the witness and from her demeanor see that she failed to understand.

3. SAME—*for purpose of impeachment a witness may be questioned as to dates testified to at preliminary hearing, more than a year before.* In order to lay a foundation for an impeachment the complaining witness in a prosecution for causing an abortion may be questioned as to certain dates which she testified to at a preliminary hearing a year and a quarter before, but the error in forbidding this line of inquiry will not require a reversal where the guilt of the defendants is so conclusively shown that it is not possible the error could have influenced the jury.

4. SAME—*what is proper modification of instruction on the presumption of innocence.* An instruction that the defendant "is presumed by the law to be innocent, and this presumption is evidence in her behalf and protects her from a conviction until her guilt is established beyond a reasonable doubt," is properly modified by striking out the words "is evidence in her behalf and," and as modified correctly states the law as to the presumption of innocence.

5. SAME—*when refusal of correct instruction as to the material allegations of an indictment is not prejudicial error.* An instruction which states that the material allegations of an indictment for causing an abortion are that the woman was pregnant, that while pregnant she aborted, that the abortion was produced by criminal means and that the criminal means were employed by the defendant, and that proof of all these allegations beyond a reasonable doubt is essential to a conviction, contains a correct statement of

the law; but the refusal to give such instruction is not prejudicial error, where the first three allegations are conclusively proved and as to the fourth the defendant is amply protected by other instructions on the presumption of innocence and degree of proof required.

6. SAME—*when verdict that defendant is "guilty of abortion" is sufficient in prosecution for causing an abortion.* In a prosecution for causing an abortion, a verdict that the defendant is "guilty of abortion in manner and form as charged in the indictment" is sufficient where the woman who aborted is not the defendant, as it is the rule that verdicts should receive a reasonable construction, and should not be set aside unless there is doubt as to their meaning or a failure to find upon some material issue involved.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. CHARLES M. THOMSON, Judge, presiding.

STEPHEN A. MALATO, (FRANCIS HINCKLEY, of counsel,) for plaintiffs in error.

P. J. LUCEY, Attorney General, MACLAY HOYNE, State's Attorney, GEORGE P. RAMSEY, EDWARD E. WILSON, and OTA P. LIGHTFOOT, (MURTY M. FAHY, of counsel,) for the People.

Mr. JUSTICE COOKE delivered the opinion of the court:

The plaintiffs in error, Peter Patrick and Hattie Chlevinski, were convicted in the criminal court of Cook county of the crime of causing an abortion. The points relied upon for reversal are (1) that the evidence was insufficient; (2) the court made improper comments during the trial on the weight and effect of evidence; (3) the court erred in giving and refusing instructions; and (4) the verdict is defective.

The indictment charged that plaintiffs in error caused Josephine Lanzaite, who was pregnant with child, to abort, and that the abortion was produced by the use of an instrument. The evidence produced on the part of the People tended to prove that during the month of August, 1914, Josephine Lanzaite, who was unmarried and who prior to

that time had never had sexual intercourse, sustained intimate relations with plaintiff in error Peter Patrick and had intercourse with him five or six times; that during that month her menstruation ceased, and in the early part of October she informed Patrick that she was pregnant; that she requested him to marry her, but he refused unless she would go to a doctor and be cured, as he expressed it; that he thereupon gave her the name and address of a Mrs. Witkowski, told her to go to her and gave her $30; that on October 13 Miss Lanzaite went to the address given to her and Mrs. Witkowski took her to the home of plaintiff in error Hattie Chlevinski, who inserted an instrument into her womb; that after using the instrument Mrs. Chlevinski gave her some hot water to drink and told her to return if she felt badly; that on October 19 she returned to Mrs. Chlevinski's home and found Mrs. Witkowski there; that at this time Mrs. Chlevinski again used the instrument upon her and gave her some tea to drink; that Miss Lanzaite paid Mrs. Chlevinski $28 of the money she received from Patrick; that after returning to her home Miss Lanzaite became ill, and on October 21 a physician was called, who made an examination and found a portion of placenta in the mouth of the uterus. The physician testified on the trial that in his opinion she had suffered an abortion a few days previous to that time.

After complaint had been made, but prior to his arrest, Patrick made a written statement to the police officers that he had known Miss Lanzaite about three years and had been keeping company with her since August, 1914; that he had intercourse with her about six times, and that she had come to him and told him that she was pregnant and that he had been the cause of it; that he asked her what she was going to do, and she said she would like to see a doctor but had no money; that he gave her $30 and told her to go and see Mrs. Shevlin, at 1553 West Fifty-first street, (the address of Mrs. Chlevinski,) and that after Miss

Lanzaite had seen the midwife he saw her and she told him she had been there. It was shown that Patrick visited Miss Lanzaite while she was ill at her home, and that in a conversation over the telephone with her landlady he assured her that he would take care of Miss Lanzaite. On the part of the defense Patrick admitted that he had had intercourse with Miss Lanzaite. He also admitted giving her the $30, but testified that she had represented to him that she needed the money to pay bills she had incurred and he gave it to her for that purpose. He admitted that he wrote the name of Mrs. Witkowski on a piece of paper and gave it to Miss Lanzaite, but explained the circumstances under which he did that to be, that Miss Lanzaite had asked him if he knew the number of Mrs. Witkowski's house, and when he said that he did not, she told him she desired to secure the number of the house; that she told him what street it was on and where to find it, and he went to the place and wrote down the street number on a slip of paper and brought it back and gave it to her. Both Mrs. Witkowski and Mrs. Chlevinski testified that they had nothing to do with causing the abortion and had not seen Miss Lanzaite on the dates she mentioned. Mrs. Witkowski, to establish an alibi, proved by a woman who had worked for her that she was sick and confined to her home with heart trouble on October 13. Mrs. Chlevinski, to establish an alibi on her part, proved by a number of witnesses that she was absent from her home on the day, October 13, assisting at the celebration of the birthday of one of her friends.

The proof on the part of the People was conclusive and convincing that Miss Lanzaite had been pregnant and that she had been caused to abort as a result of the introduction of some foreign substance into her uterus. Her condition, as found by the physician who was called on October 21, showed conclusively that some operation had been performed on her by the use of some instrument to cause her to abort, and that she had aborted. From all the evidence

the jury were fully warranted in their conclusion that the defendants had been proven guilty.

During the examination of the complaining witness objection was repeatedly made to her testifying that she was pregnant, on the ground that she was not qualified to testify to that fact. Finally, in overruling an objection made upon that ground, the court made the remark, "If anyone knows it the woman ought to know it." During the cross-examination, when it was apparent that the witness was confused, the court interrupted to remark to counsel for the defense, "She did not understand you." When she was being cross-examined with reference to the instrument she testified Mrs. Chlevinski used upon her, she was asked the question, "Was it cylindrical in form?" whereupon the court remarked that she did not know what cylindrical meant. During the examination of Dr. Glaser, the physician who was called on October 21 to attend Miss Lanzaite, after he had described the condition in which he had found her, the court asked the witness if he came to the conclusion that the removal of the fœtus had been induced by some foreign body,—an instrument or something else,—from his own examination and not from any history he had received of the case, to which the witness responded that he did. During the examination of an expert medical witness called on the part of the defense the court asked him a hypothetical question which assumed the removal of a fœtus at the end of eight or nine weeks of pregnancy. All of these actions of the trial court are complained of. We see nothing improper in any of them. While it is true that a fœtus had not been specifically referred to as having been expelled from the womb of the complaining witness, Dr. Glaser had testified positively that an abortion had occurred and that he found a portion of the placenta in the uterus. From this it must conclusively follow that a fœtus had been expelled from the womb. The court did not err in assuming that it had been proven that a fœtus had been removed.

Whether or not the complaining witness understood the meaning of the word "cylindrical" would seem unimportant, but the court observed the witness and was no doubt able from her demeanor to see that she failed to understand counsel, and it was not error for him to make this suggestion.

Counsel for the plaintiffs in error attempted to cross-examine Miss Lanzaite with reference to certain dates she had testified to on the preliminary hearing, in order to lay the foundation for impeachment. The court sustained objections to this line of inquiry upon the theory, as stated in the ruling, that the preliminary hearing had occurred a year and a quarter before; that the witness might have remembered dates at that time and not have such a recollection at the time of the trial, and that it would not tend to impeach her if she testified on the trial that she could not remember the dates. This ruling was wrong. The witness had testified to certain dates on the trial, and plaintiffs in error were entitled to show any contradictory statements she had previously made. While the court erred in this particular, the error was not so grave as to require a reversal. The guilt of plaintiffs in error was so conclusively shown that it is not possible that this error could have influenced the jury. The essential question was whether plaintiffs in error committed the acts with which they were charged. Patrick admitted having had intercourse with her. The exact dates when these various acts occurred are largely unimportant.

The court, in an instruction offered by the People, defined the crime of producing an abortion or miscarriage in the language of the statute, which states that "whoever by means of any instrument, medicine, drug or other means whatever causes any woman pregnant with child to abort," etc., shall be punished. It is insisted that this instruction was erroneous for the reason that the indictment charged only that the abortion had been caused by the use of an instrument, and that the complaining witness testified that

on her first visit to the home of Mrs. Chlevinski she was given hot water to drink and on the occasion of her second visit she was given some kind of tea to drink. It is not complained that this evidence, in itself, was prejudicial or could have implied more than that Mrs. Chlevinski gave these drinks to the complaining witness to refresh and strengthen her. It is claimed, however, that in the light of this testimony it was error for the court to instruct the jury, in the language of the statute, that the crime could be committed by the use of medicine or drugs, and that the jury would naturally infer that it was the view of the court that the complaining witness may have been caused to abort by the administering to her of some drug contained in the hot water or the tea which Mrs. Chlevinski had given her to drink. We are of the opinion that the jury could not have been misled by this instruction. The only proof as to the means used for producing the abortion was that some instrument was inserted into the uterus. No attempt was made to prove that the abortion was caused by any other means, and there is not the slightest intimation to be found anywhere in the record that it was produced other than by the use of an instrument.

Plaintiff in error Mrs. Chlevinski offered an instruction on the presumption of innocence which contained this statement: "She is presumed by the law to be innocent, and this presumption is evidence in her behalf and protects her from a conviction until her guilt is established beyond a reasonable doubt." The court struck out the words "is evidence in her behalf and," from this instruction and gave it as thus modified. As modified the instruction gave the law correctly as to the presumption of innocence.

It is complained that the court erred in refusing three instructions of the same import, the first being as follows:

"The court instructs the jury that the following are material allegations of the indictment in this case: That Josephine Lanzaite was pregnant; second, that while Josephine

Lanzaite was pregnant she aborted or miscarried; third, that said abortion or miscarriage was produced by criminal means; fourth, that said criminal means were employed by the defendant Hattie Chlevinski. And if, upon consideration of all the evidence in this case, you find that all the foregoing propositions have not been proven beyond a reasonable doubt then you must find the defendant Hattie Chlevinski not guilty."

This instruction is a correct statement of the law and should have been given. From a consideration of the whole case we are of the opinion that the refusal to give the instruction was not prejudicial error. The first three elements described in the instruction were abundantly and conclusively proven. As to the fourth, whether the criminal means were employed by Mrs. Chlevinski, she was amply protected by a number of other instructions given on the question of presumption of innocence and the degree of proof required.

Two verdicts were returned, each of which found the particular plaintiff in error "guilty of abortion in manner and form as charged in the indictment." It is insisted that this verdict is defective and insufficient. The verdict is informal and the attempted definition of the crime is incorrect. The plaintiffs in error were charged with having caused or produced an abortion. The informality in the verdict is not of such character as to render it insufficient. Verdicts should have a reasonable intendment and receive a reasonable construction, and should not be set aside unless from necessity originating in doubt as to their meaning or from an immateriality of the issue found or a failure to find upon some material issue involved. (*People* v. *Lee,* 237 Ill. 272.) While an abortion or miscarriage may occur and no one be guilty of any offense in connection therewith, there can be no doubt as to the meaning of the word "abortion" as used in this verdict. Plaintiffs in error were accused of having produced an abortion upon Josephine Lan-

zaite. The jury found them guilty of abortion. Under the indictment and the proof made this expression can bear but one meaning, and that is that the jury found them guilty of causing an abortion. Such a verdict as the one rendered could only be doubtful or insufficient where the woman who aborted was being charged with the offense. While the verdict is informal, its meaning is plain, and it is therefore sufficient.

Perceiving no prejudicial error in the record the judgment of the criminal court is affirmed.

*Judgment affirmed.*

---

(Nos. 10646-10708.—Judgment affirmed.)
JOHN FREDERICK WALLACH *et al.* Appellants, *vs.* CORNELIUS K. G. BILLINGS *et al.* Appellees.

*Opinion filed February 21, 1917.*

1. BANKS—*what allegations in bill against a director show that he was a non-resident.* Where a bill by stockholders charging a director with negligence alleges that for five years he was out of the State within the meaning of the Statute of Limitations but that during that period he came into the State about three times a month it must be inferred that he was a non-resident, as otherwise such allegations are irreconcilable.

2. SAME—*duties of a bank director vary according to the circumstances.* The duties of a bank director vary according to the business, circumstances and situation of every individual bank, and it is not possible to specify what particular things he must do in order to avoid the imputation of negligence in the management of the bank's affairs.

3. SAME—*when bank directors are liable for losses to stockholders.* Generally speaking, bank directors are liable to stockholders for losses where such losses are the proximate result of a breach or neglect of duty on their part, but they are not insurers and are not necessarily liable for every loss which happens to occur.

4. SAME—*when stockholders cannot complain of acquiescence of director in misappropriations of the president.* Stockholders can not complain of acquiescence by a director in misappropriations by the president of the bank where they allege in their bill charging