673 P.2d 955

The STATE of Arizona, Appellee,

v.

Joseph Anthony GARCIA and Hector Medrano, Appellants.

No. 2 CA–CR 2798.

Court of Appeals of Arizona, Division 2.

Sept. 26, 1983.

Review Denied Dec. 20, 1983.

Robert K. Corbin, Atty. Gen. by William J. Schafer III and Greg A. McCarthy, Phoenix, for appellee.

The Wildermuth's & Roer by David M. Roer, Coolidge, for appellant Garcia.

Michael J. Brune, Florence, for appellant Medrano.

## OPINION

HOWARD, Chief Judge.

Appellants were tried jointly and each convicted of four counts: sexual assault, aggravated assault, aggravated robbery and kidnapping. The offenses all arose out of an incident on the night of January 17 and early morning of January 18, 1982. The victim was a 21-year-old student at Central Arizona College. On January 17 she was returning to school for the spring semester and had traveled from her home in Tuba City, catching a bus from Flagstaff to Casa Grande. The bus arrived in Casa Grande around 11 p.m. She was unable to contact her friends at the college to pick her up so she began to walk to a friend's apartment in town. A few blocks from the bus station, appellants offered her a ride and she got into their car. Appellant Garcia was driving and Medrano was the passenger. Instead of driving to the college, Garcia drove to a picnic area on Casa Grande Mountain. When he started to fondle the victim, she sprayed mace in his eyes and he hit her. Medrano pulled her out of the car and both appellants took off her clothes while she fought against them. Garcia raped her then forced her to perform fellatio on him. Medrano then forced her to perform fellatio on him and raped her. Garcia then had anal intercourse with her.

Throughout these events, both appellants were hitting and kicking the victim. Garcia then handed her her sweater and pants and told her they were going to kill her. The victim ran down the mountain barefoot, eventually reaching help. At the beginning of the ride she had approximately $75 in her pocket. The money was gone when she was running down the mountain.

▪ Both appellants argue that the state failed to present substantial evidence to support a finding that the assault was aggravated. We agree. Appellants were charged with aggravated assault by causing serious physical injury to another in violation of A.R.S. § 13–1204(A)(1). None of the other definitions of aggravated assault in A.R.S. § 13–1204 apply to this case. "Physical injury" and "serious physical injury" are defined in A.R.S. § 13–105. A.R.S. § 13–105(24) states, " 'Physical injury' means the impairment of physical condition." A.R.S. § 13–105(29) states:

" 'Serious physical injury' includes physical injury which creates a reasonable risk of death, or which causes serious and permanent disfigurement, or serious impairment of health or loss or protracted impairment of the function of any bodily organ or limb."

There was no testimony that the injuries inflicted on the victim created a risk of death. In fact, the police spent several hours questioning and photographing her before her wounds were treated because they were not considered serious enough to require immediate care.

▪ At trial, the state argued that the victim received a serious physical injury within the meaning of the statute because her mental or emotional health was seriously impaired. The evidence does show that the experience was emotionally traumatic for her. However, the plain meaning of the statute does not include injuries which are solely mental or emotional. While "health" in the phrase "serious impairment of health", § 13–105(29), might be defined to include mental or emotional health, when read in conjunction with § 13–105(24), it is clear that the legislature intended to limit the statute to impairments of physical health. See also *State v. Rossier,* 175 Conn. 204, 397 A.2d 110 (1978), where the Connecticut Supreme Court refused to find a serious physical injury under a similar statute where the assault victim's injuries consisted primarily of emotional trauma.

▪ On appeal, the state argues that the assault was aggravated because it caused serious and permanent disfigurement, in that the victim's hymenal membrane was broken. This injury does not fit within the meaning of "disfigurement." In *Moreno v. Industrial Commission,* 122 Ariz. 298, 594 P.2d 552 (App.1979), a workmen's compensation case, the court said, "To disfigure is to mar the appearance of an object." 122 Ariz. at 299. "Disfigurement" is defined in Black's Law Dictionary (4th ed. 1968): "That which impairs or injures the beauty, symmetry or appearance of a person or thing; that which renders unsightly, misshapen, or imperfect, or deforms in some manner." See also *State v. Ortega,* 77 N.M. 312, 422 P.2d 353 (1966). Where, as here, the injury does not impair the visible appearance of the victim, no serious and permanent disfigurement has occurred.

▪ There was, therefore, no evidence to support a finding that the assault caused a serious physical injury. However, the jury found, beyond a reasonable doubt, all the elements of assault in violation of A.R.S. § 13–1203. Therefore, appellant's convictions for aggravated assault should be reduced to convictions for assault.

▪ Appellants also argue that there was no substantial evidence that a robbery occurred. First, they contend there was no evidence that either of them took the victim's money, but that the money could have fallen out of her pocket. The victim testified that while Medrano was raping her, Garcia was "looking through my stuff." Whether or not appellants took the money is a factual determination for the jury. Where the evidence discloses facts from which the jury could legitimately deduce either of two conclusions, it is sufficient to

overcome a motion for acquittal. *State v. Cravin,* 96 Ariz. 346, 395 P.2d 706 (1964).

■ Second, appellants contend that there was no evidence that they threatened or used force against the victim with the intent to coerce surrender of her property or prevent her resistance to the taking of the property, as required by the robbery statute, A.R.S. § 13–1902(A). The record is replete with evidence of appellants' threats and use of force to accomplish the sexual assault. This does not mean they could not have been used to accomplish the robbery as well. Appellants' intent was also a question for the jury. *State v. Tinghitella,* 108 Ariz. 1, 491 P.2d 834 (1971).

■ Appellant Garcia contends that the trial court erred in admitting evidence that the victim was a virgin. He argues that *State ex rel. Pope v. Superior Court,* 113 Ariz. 22, 545 P.2d 946 (1976) stands for the proposition that the prior sexual experience of a rape victim, whether chaste or unchaste, is irrelevant to the question of consent. We need not address this question here. The evidence of the victim's virginity (except for an unresponsive answer by the physician which is discussed below) was limited to the testimony of the physician who examined her on January 18 detailing her injuries, which included recent hymenal tears, and to the victim's negative answer to the question, "Had you ever had sexual intercourse with a man before that night?" The evidence was relevant to show that sexual intercourse had occurred that night. It was not of the type to excite the jury's sympathy for the victim by focusing on her prior chastity. Therefore, appellants were not unfairly prejudiced by its admission.

■ During the direct examination of the physician, the following exchange occurred:

"Q. She was forcibly raped?

A. Forcibly pushed into the situation and she tried to struggle against it. Personally, she was also—may I say one other thing?

Q. Certainly.

A. This was a girl exhibiting her own fears being broken down. She had been told all of her life to remain pure for the day when she married."

Appellants immediately moved for a mistrial, which the trial court denied. Appellant Garcia now contends that the court abused its discretion in denying his motion. In *State v. Christensen,* 129 Ariz. 32, 628 P.2d 580 (1981), the court stated: "A mistrial is a serious remedy. Its granting is left to the sound discretion of the trial court, which will not be disturbed unless it is plainly abused." 129 Ariz. at 38, 628 P.2d 580. It appears from the record that the doctor had no foundation for his statement. It was within the trial court's discretion to decide that the members of the jury would obey its instruction to disregard the remark, and draw their own conclusion from the evidence that the victim had been a virgin.

■ Garcia contends that he was denied a fair trial by the trial judge's conduct. His first complaint is that the judge made faces while his attorney was speaking. He brought the matter to the court's attention in chambers, and the trial court judge replied: "I certainly haven't been communicating any type of facial expressions, Mr. Roer. I find that as very offensive that you bring this up." He then suggested that if he had been making facial expressions he was doing it unintentionally and indiscriminately, when the prosecutor was talking as well. We cannot determine, on this limited evidence, that the trial court judge, in fact, did make faces and that appellants were thereby denied a fair trial.

Garcia also argues that he was denied a fair trial by the judge's interjecting his opinion as to the victim's credibility. We do not agree. The three instances of which appellant complains are as follows:

"Q. But would you tell me if you did have marijuana?

· MS. KEATING: Objection, your Honor. She has already answered that she didn't have any marijuana.

THE COURT: Overruled. She may answer if she can.

MR. ROER: Thank you, Judge.

Q. (by Mr. Roer) Would you please answer the question.

A. What are you saying? You are getting me all confused.

THE COURT: Repeat the question for her. I don't think she understands it, counsel.

Q. (by Mr. Roer) [t]he question was, Would you tell me if you did have marijuana?

A. No.

Q. You would not tell me, would you?

A. I didn't have any.

Q. Would you tell me if you did have marijuana?

THE COURT: I think she is confused. I think she has answered she didn't have it, counsel.

\* \* \* \* \* \*

Q. On direct examination you indicated no more than once at that time. How many times were you struck?

MS. KEATING: Objection, your Honor.

A. I don't remember.

MS. KEATING: He is giving her no time period for when he wants her to answer about when she was struck.

THE COURT: Do you want to clarify that? I don't believe she quite understands the question, counsel.

Q. (by Mr. Roer) When you were in that automobile how many times were you struck by Mr. Garcia?

A. I don't know. He kept hitting me.

\* \* \* \* \* \*

Q. ... I quote from page ten, the question being:

'The driver made you perform oral sex twice on him?'

And your answer was: 'Yeah.' Which one of those two is true, ...?

A. It's all the same thing, isn't it?

Q. Pardon?

A. Isn't it all the same thing?

Q. Not in specific detail, not as to the incidents. Could you please tell us which is the way it happened.

A. (No response.)

Q. Could you please tell the jury.

A. (No response.)

MR. ROER: Your Honor, would the Court please advise the witness to answer the question.

THE COURT: I think she is answering the best she can, counsel.

Can you answer that?

THE WITNESS: No.

THE COURT: Do you understand the question, Miss ...? Do you understand the question he asked you?

THE WITNESS: I did answer it.

THE COURT: Would you rephrase your question again to see if she can understand?

THE WITNESS: I told you everything, didn't I?

Q. (by Mr. Roer) Which one of the two is the way that it occurred, Miss ...; the way you reported to Officer Rodriguez or the way you told it today?

A. I can't say. I'm all confused."

 As a general rule, remarks and conduct of the trial judge in performing his duty to regulate the conduct of the witnesses are not improper, provided that in so doing he does not take away or abridge any rights of the accused. Cf. *State v. Lubetkin,* 78 Ariz. 91, 276 P.2d 520 (1954). The judge may ask a witness if he understands the question which has been put to him. *State v. Matthews,* 98 Mo. 125, 10 S.W. 144 (1888), overruled on other grounds, *State v. Weaver,* 165 Mo. 1, 65 S.W. 308 (1901). If it is evident that a witness does not understand a question the judge may explain to him the nature of the answer or information called for. *Kennison v. State,* 104 Tex. Cr.R. 391, 283 S.W. 813 (1926). The trial court may also advise counsel of the witness' lack of under-standing. *Denison v. State,* 117 Neb. 601, 221 N.W. 683 (1928); *People v. Patrick,* 277 Ill. 210, 115 N.E. 390 (1917).

 In ruling on the admissibility of evidence, the trial court's remarks are not erroneous provided they are not unfair and prejudicial to the accused. *State v. Cruce,*

61 Ariz. 233, 147 P.2d 698 (1944); *Cole v. State,* 41 Ariz. 1, 15 P.2d 238 (1932). And see, *State v. Marovich,* 109 Ariz. 45, 504 P.2d 1268 (1973). As a general rule, the remarks of the judge during the trial in the presence of the jury indicating his opinion as to the credibility or lack of credibility of a witness constitutes error. *Price v. State,* 171 Tex.Cr.R. 248, 347 S.W.2d 616 (1961); 23 C.J.S. Criminal Law § 993, p. 1031.

Defense counsel's questions were confusing and misleading. The trial court acted properly and in so doing did not express any opinion on the credibility of the witness or comment on the evidence in violation of Art. 6, § 27 of the Arizona Constitution. Nor were the comments of the trial court unfair or prejudicial.

Garcia also argues that, after the state raised the issue of the victim's prior chastity, he should have been allowed to question her about prior unchaste behavior other than sexual intercourse. As we stated above, the state limited itself to showing that the victim had been a virgin. *State ex rel. Pope v. Superior Court,* supra, specifically provides, as an exception to the general rule that prior unchaste acts are inadmissible, for the admission of "testimony which directly refutes physical or scientific evidence, such as the victim's alleged loss of virginity...." 113 Ariz. at 29, 545 P.2d 946. The trial court correctly limited appellants to presenting such testimony.

Finally, Garcia argues that the trial court abused its discretion by postponing arguments on appellants' motions until they could be made in chambers. It is true that the preferred practice is for the court to hear objections at the bench when the issue arises. *State v. Babineaux,* 22 Ariz. App. 322, 526 P.2d 1277 (1974). However, in *State v. Sanchez,* 130 Ariz. 295, 635 P.2d 1217 (App.1981), we held this does not constitute reversible error absent some demonstrable prejudice and appellant does not refer us to any specific instances when he may have been prejudiced by this practice.

Appellants' convictions for aggravated assault are reduced to convictions for as-sault, a class 1 misdemeanor, and this case is remanded for resentencing. The judgments are affirmed in all other respects.

HATHAWAY and BIRDSALL, JJ., concur.