[Criminal No. 753.   Filed October 18, 1932.]

[15 Pac. (2d) 238.]

# ED COLE, Appellant, v. STATE, Respondent.

(1)

Mr. E. W. McFarland and Mr. Tom Fulbright, for Appellant.

Mr. K. Berry Peterson, Attorney General, Mr. Renz L. Jennings, Assistant Attorney General, and Mr. Dodd L. Greer, County Attorney, for the State.

LOCKWOOD, J.—Ed Cole, hereinafter called defendant, was informed against for the crime of grand larceny. He was tried to a jury which found him guilty, and he was duly sentenced to serve from three to five years in the Arizona prison. From this judgment he has appealed.

There are some nine assignments of error which we shall consider in such order as seems advisable. The first two in substance are that the evidence fails to support the verdict. It is necessary in passing on these that we review briefly the facts in the case, and, in so doing, we must, of course, consider the evidence viewed in its strongest light in favor of the verdict as returned by the jury. *Macias* v. *State*, 36 Ariz. 140, 283 Pac. 711. So considered it establishes the facts to be as follows:

One Clem Saffell was in 1927 the owner of a cow which was at that time branded in his brand, the

D-horn, and correspondingly ear-marked. He did not see it again until some time in the summer of 1930 when he was advised by Arthur Slaughter that a cow bearing his brand had been found at the ranch of the latter, some eighteen miles from the Saffell ranch. He went to Slaughter's in a few days and examined the cow in question, recognizing it to be the animal owned and last seen by him in 1927 from various personal peculiarities, apart from the brand. On examining the brands then on it, it appeared there was a D-horn brand on the left side which had been changed into the O V brand. This altered brand had been barred out and the holding brand on the cow was E L K, a brand which, at least from 1929 on, was owned by defendant individually. The cattle ranches of Saffell, Cole and Slaughter were in the same general vicinity, the former, where the cow had ranged in 1927, being in Apache county, and cattle owned by all of these parties were worked regularly together in the annual round-ups in accordance with the usual range customs. Defendant was arrested and charged with stealing the cow, and shortly thereafter he claimed to own the animal, stating that he had bought it from one W. C. Richardson. The latter, however, testified at the trial that, while he had sold a number of O V cattle to defendant, he never had sold any which had at any time borne the D-horn brand. This last brand was obviously the oldest of the brands on the animal, while the alterations into O V and the E L K brand were of a later date and apparently placed on it approximately the same time. It further appeared that the cattle inspector in that district about this time found upon the same general range a number of other cattle which had originally been in various brands belonging to different cattlemen of the vicinity, but such brands had been barred out and defendant's E L K brand placed thereon. When defendant was told of this fact, he claimed to

own at least part of these cattle. There is no evidence as to how he acquired them, and the owners of some of them testified positively that they had never sold the same to defendant or anyone else. This substantially is the evidence upon which the state relies for a conviction.

Defendant contends most strenuously that it is utterly insufficient to sustain the verdict, and in support thereof has cited to us the cases of *State* v. *Moss,* 95 Or. 616, 182 Pac. 149, 188 Pac. 702; *State* v. *Morris,* 70 Utah 570, 262 Pac. 107.

In the case first cited the evidence in substance was that the defendant was the owner of several hundred head of cattle, which, together with the one on which the indictment was based, and others belonging to different parties, were found together in a secluded glen in the forest reserve; that the original brand on the animal alleged to be stolen has been mutilated and the brand of defendant placed on it, and that an employee of defendant was seen somewhere near the cattle. The Supreme Court of Oregon held that this evidence was insufficient to sustain a conviction. The decision seems to be based on the reasoning found in the following quotation:

" . . . But it must be remembered that, according to the undisputed evidence of the state's own witnesses, the defendant had no exclusive cattle privilege on the range in question, but, on the contrary, it was open to every one's cattle and was used in common by all.

"If these animals had been found in defendant's immediate possession and control, as in his barn or sheds, or even, in some circumstances, in his field, a different question might arise, and there would, no doubt, be a presumption or inference that he was responsible for the disfigurement and rebranding. The case would then be analogous to the case offered on behalf of the state, as an illustration, where stolen property is found in the room occupied by a defend-

ant. Here there was no such immediate possession or control. . . .

"If the cattle had been found with the brands freshly burned or their ears and dewlaps fresh and bleeding from the disfigurement, there might have been a just inference, from the circumstances, and the fact that Silvers was met coming from the immediate vicinity, that he was the party who had made the changes. But here, as we read the record, there was no claim that the disfigurement was immediately fresh. The evidence seems to show that the blotch designated as the 'frying pan brand' had been probably placed on the animal a few weeks before. One other brand was thought to have been made that season, and the remainder were old brands made one or two years before.

"It must be remembered also that, even if Silvers had been proven to have done the rebranding, it would still have been necessary to connect the defendant with the act, and show by direct or circumstantial evidence that he authorized or directed it, or in some way participated therein, before he could be convicted of the crime. Authority to commit a criminal act can never be inferred from the mere fact that the alleged agent is in the lawful employ of the defendant. . . .

"We do not think that under the circumstances the claim of the defendant that he thought some of these cattle were his was sufficient evidence to connect him with any certainty with the disfigurement of the brands. There was no evidence that the defendant himself ever rode upon the range or did the branding of his cattle himself, and the only evidence in that regard is his own evidence that he did not. There is no evidence that he had ever been in the vicinity where the cattle were found except his own statement that he was up there once, a few weeks before these cattle were taken off of the range. There is no evidence that he ever sold or disposed of any of them, or attempted to do so. No evidence that he ever had them in his pastures in the fall or in his feed lots in the winter. There is no circumstance which even tends to show that he was present at the branding of any of these animals or authorized or directed it.

There is nothing but the mere fact that the animals were found running with some of his cattle, together with other cattle, upon a range free to any one who wished to use it, and that some one had placed a brand belonging to him thereon.''

The case of *State* v. *Morris, supra,* cites the Moss case, *supra,* approvingly, and follows the same line of reasoning.

With all due respect to the opinions of the learned courts above referred to, we are of the opinion that the rule laid down as to the extent and character of the possession of stolen range cattle required to sustain a conviction is too narrow.

We have had a somewhat similar question before us in the case of *Holder* v. *State,* 31 Ariz. 357, 253 Pac. 629. Therein we say:

"When a number of animals were found misbranded into brands under the control of appellant the conclusion would be irresistible that there was an attempt on his part to convert them or else an effort on the part of another person to throw suspicion upon him, and it would be for the jury to determine which of the two alternatives was the correct one.

"So far as the sufficiency of the evidence to sustain the verdict is concerned, it is not necessary for us to review it. We are satisfied that it points clearly to the conclusion, either that appellant was guilty as charged, or else that some other person engaged in a deep laid plot to convict him of the crime. Taking into consideration the testimony that appellant, when arrested, offered to sign an agreement to leave the state and never return if the true owner of the animal did not prosecute, we think the jury was justified in believing he was guilty as charged, as such an offer on his part would indicate a consciousness of guilt. In cases of this nature each one must stand on its own facts, and circumstantial evidence is generally the only kind available. If it were required that the state should prove a defendant was actually seen in the act of misbrand-

ing cattle, conviction would be practically impossible. Cattle rustlers do not as a rule invite spectators to witness their acts. Nor do we think the same rule as to the character of possession of the stolen goods should prevail in this class of cases as in ordinary larceny. In the latter instance the natural instinct of the thief is to retain the stolen property in his physical possession or under his immediate control, while in cattle rustling the obvious course is to release it on the open range as soon as the brand is altered. The evidence was sufficient to sustain the verdict.''

We think, as we stated in the Holder case, that the rule in regard to the character or possession of stolen goods required to sustain a conviction should be and is different in the case of cattle larceny from that which is generally followed in the larceny of other property. Further than that, in the case at bar the evidence is that the defendant made claim to the ownership of the cow described in the information, as well as to some other cattle similarly misbranded. We think this claim of ownership is equivalent to actual possession of the stolen animals. When a number of animals are found misbranded, and that brand is under the control of a defendant, the conclusion is irresistible either that he attempted to steal them or that some other person was endeavoring to ''frame'' him for such an offense. When under such circumstances he claims the ownership of the animals so misbranded, and it appears he has made false statements as to the manner in which they were acquired, we think it is sufficient to justify the jury in assuming that they were branded by him or under his direction and with intent to commit the crime of grand larceny. The evidence is sufficient to sustain the verdict.

The third assignment of error is that the court erred in commenting on certain evidence. The alleged comment is shown by the following questions and answers:

"Mr. Vaught. Mr. Saffell, did you ever authorize Mr. Cole or any other person to change that D Horn brand on that animal?

"Mr. Ferguson. That is objected to, if the Court please. There is no proof of anything connecting Ed Cole.

"The Court. He is assuming something not in evidence?

"Mr. Ferguson. Yes.

"The Court. On the view that he did change it I will let him answer that question. If you are in doubt, Mr. Vaught, that the defendant did not change the brand I will let him answer the question.

"Mr. Vaught. In a case of this kind there is always—

"The Court. What is the purpose of it?

"Mr. Vaught. To show that he never sold this animal.

"The Court. I will permit it on that condition. If you tell me that he did change the brand, I will let him answer the question.

"Mr. Vaught. Yes."

It is contended that this is in effect a statement by the court that, if counsel for the prosecution stated that defendant did change the brand in question, the court would believe such to be the fact and admit certain evidence. We think the language is not necessarily susceptible of the construction placed upon it by defendant. The question objected to was, of course, proper if it was the state's contention that defendant had changed the brand on the Saffell cow. We think the statement made by the court really was to the effect that, if the state avowed it was its intention to prove that defendant had changed the brand, the question would be allowed, and, upon the statement by counsel for prosecution that such was the avowal, the objection was overruled. While the language used by the trial court was not carefully chosen, it does not of itself constitute reversible error.

The fourth assignment of error is the admission of certain certified copies of documents tending to show the ownership of the D-horn brand. This assignment is not argued by defendant in his brief, and we are of the opinion the record clearly shows the documents were properly admitted for the purpose indicated.

The fifth assignment of error is the admission over the objection of defendant of evidence that the brands on other cattle than the one described in the information had been mutilated and changed to the E L K brand. The court ruled specifically on a similar objection in the case of *Holder* v. *State, supra,* adversely to defendant's contention.

The sixth assignment of error is the admission of evidence that a certain cow, originally the property of Mrs. Bert Colter, was found near defendant's ranch with the Colter brand mutilated and a brand belonging to defendant's wife on the animal. We are of the opinion that this evidence was not admissible under the rule stated in *Holder* v. *State, supra,* unless it also appeared that defendant was in active charge of his wife's cattle.

The seventh assignment of error is the giving of the following instruction to the jury:

"There has been some evidence, gentlemen of the jury, as to the character of the defendant, and you are instructed in that regard that the previous good character of the defendant, if such has been proved, is a proper matter for the consideration of the jury like any other evidence proved in the case. If, however, you are satisfied beyond a reasonable doubt from all the facts and circumstances proved in the case that the defendant is guilty of the crime as charged in the information, then it is your duty to find the defendant guilty, even tho you may be satisfied from the evidence that the defendant sustained a good character and reputation previous to and up to the time of the commission of the crime

charged, if you find the same was committed as charged.''

We have held a similar instruction to be objectionable in the case of *Singh* v. *State,* 35 Ariz. 432, 280 Pac. 672, 67 A. L. R. 129. When good character evidence is offered, it should not be considered independently of the other evidence in the case, and after a consideration and determination of the effect of the latter, but along with and as an integral part of all such other evidence, and if all the facts and circumstances shown by the other evidence *taken together with the good character evidence* raise a reasonable doubt, it is the duty of the jury to acquit. The instruction given would have the tendency to cause the jury to believe that they must consider the other evidence apart from the character evidence, and only in case that they had a reasonable doubt on such other evidence alone could the character evidence have any bearing upon their verdict. It is true that this instruction, while erroneous, may not always be considered reversible error. In the case at bar, however, the evidence is in conflict as to whether defendant did misbrand the cow in question or did claim the ownership thereof after he had been arrested. He denies both allegations. Certainly under these circumstances a jury might well consider the previous good character of the defendant, when considered *with* the other evidence, sufficient to raise a reasonable doubt as to his guilt.

There is another instruction which is assigned as error that reads as follows:

''I further instruct you that the State has submitted evidence tending to show that the defendant has been guilty of other offenses of a similar nature to the stealing of the cow in question here, and if you believe from the evidence that the State has failed to prove beyond a reasonable doubt that the defendant stole the cow in question, the one alleged in

the information, then you would not be at liberty to treat or consider the other offenses for any purpose whatever; *in other words, gentlemen of the jury, we are not attempting to convict him for any offense except the stealing of the D-horn cow alleged in the information.*" (Italics ours.)

We think this is faulty for two reasons: In the first place it fails to point out properly to the jury the reason for admitting evidence of other offenses of a similar nature and the consequent limitation of the extent and effect of such evidence, and, second, and more serious, the last part of the instruction would naturally and reasonably be construed by the jury as being a declaration by the trial judge that he was personally convinced of the guilt of the defendant and was doing his best to assist the county attorney in convicting him. This, of course, would be prejudicial in the highest degree. Trial juries generally have great confidence in the integrity and ability of the trial judge and listen eagerly for any expression of his bearing upon the merits of the case. A statement of this nature, though doubtless made inadvertently, would be calculated to sway the mind of any juror who otherwise might have a reasonable doubt as to the guilt of the defendant. For the foregoing errors the judgment of the superior court of Apache county is reversed and the case remanded for a new trial in accordance with the principles laid down herein.

McALISTER, C. J., and ROSS, J., concur.